IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

PATRICK C. LYNN,                )
                                )
                    Plaintiff,  )    **CIVIL ACTION**
                                )
v.                              )    No.  12-3104-MLB
                                )
LEONARD MADDOX,                 )
                                )
                    Defendant.  )
                                )

### MEMORANDUM AND ORDER

This case comes before the court on defendant's motion for summary judgment.  (Doc. 162).  The motion has been fully briefed and is ripe for decision.  (Docs. 117[1], 163, 185, 186, 194, 212, 213).

**I.  Procedural History**

Plaintiff, a prisoner, contends that defendant Maddox, a guard, violated his Eighth Amendment right to be free from excessive force. On May 1, 2013, the court denied defendant's motion to dismiss.  The parties proceeded to discovery and the dispositive motion deadline was set for March 7, 2014.  Prior to the deadline, plaintiff filed a "Response and Supporting Arguments that Defendant is Absolutely Not Entitled to Qualified Immunity."  (Doc. 160).  Two days later, defendant submitted his motion for summary judgment.  (Doc. 162).

On March 13, 2014, plaintiff sought additional time to file a response to defendant's motion.  The court granted the request and ordered plaintiff to comply with Rule 56.  The court notified plaintiff that failure to comply may result in sanctions and/or

---

[1] This document was filed conventionally with the clerk's office and contains a video of the use of force incident.

dismissal. (Doc. 167). Plaintiff sought additional extensions and ultimately filed a response and memorandum (Docs. 185, 186). Plaintiff's response, however, does not comply with Rule 56. In his response, plaintiff fails to respond to defendant's statement of facts.

On December 3, 2014, the court ordered plaintiff to file a supplemental response to defendant's motion for summary judgment in which he was to respond to defendant's statement of facts and, if necessary, set forth his statement of facts. Plaintiff filed his supplemental response on December 30, 2014. (Doc. 212). In his response, plaintiff set forth his response to defendant's statement of facts. Plaintiff's response also contained a four-page statement of facts; however, plaintiff failed to number the paragraphs as required by D. Kan. Rule 56.1. Plaintiff's statement of facts is simply a stream of consciousness with no citations to the record to support his facts. Out of an abundance of caution, the court will consider plaintiff's statement of facts as long as the facts contained therein are supported by competent evidence.

On January 13, 2015, defendant submitted a supplemental reply. (Doc. 213). Plaintiff moves to strike the reply as improper and asserts that defendant did not have permission to file the reply. Defendant's supplemental reply is permitted under the rules. D. Kan. R. 56.1. Plaintiff's motion to strike is therefore denied. (Doc. 214). In addition to filing a motion to strike, plaintiff submitted a surreply without seeking leave of court. Therefore, the court will not consider plaintiff's surreply. (Doc. 215).

**II. Facts[2]**

Plaintiff is currently confined in Lansing Correction Facility (LCF). In 2011, plaintiff was confined in El Dorado Correctional Facility (EDCF). At that time, defendant was employed at EDCF as a Corrections Officer on the Special Security Team (SST). In early February 2011, plaintiff was assigned to a segregation cell in the EDCF infirmary due to frequent complaints of chest pains. Plaintiff, however, refused to be examined by medical staff and made repeated threats, i.e., "I'm going to rape that bitch," "I want to break her neck," and threatened to throw feces on staff. (Doc. 163, exh. 2).

On February 13, plaintiff again complained of chest pain but refused to be restrained and examined, and instead continued threatening staff. As a result, EDCF Major Dragoo and Deputy Wardens Snyder and Gabriel made the decision to move plaintiff to an observation cell so that he could be monitored by medical staff. EDCF staff formed a use of force team to perform the forced cell extraction due to plaintiff's refusal to cooperate.

Defendant and the use of force team approached plaintiff's cell door and informed plaintiff that if he failed to come to the door and be restrained they would use force. Plaintiff refused to come to the door and continued to threaten staff. Defendant and the team entered the cell and restrained plaintiff by first using an electric shield

---

[2] All facts set forth are either uncontroverted, or, if controverted, taken in the light most favorable, along with all favorable inferences, to plaintiff. See Hall v. United Parcel Serv., No. Civ. A. 992467-CM, 2000 WL 1114841, at *5 (D. Kan. July 31, 2000) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)); see also United Missouri Bank of Kansas City v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993). To the extent relevant, the factual disagreements between the parties will be noted.

which was applied to plaintiff for approximately seventeen seconds. The team then placed plaintiff in handcuffs and leg irons. The team lifted plaintiff in a standing position and plaintiff refused to walk, telling the team that he would need to be carried. The team then carried plaintiff to the observation cell. Once inside the observation cell, the team removed plaintiff's clothing so that the nurse could examine plaintiff. During the move and inside the observation cell, plaintiff continued to make multiple threats to staff. See Doc. 163 ¶ 18.

The team removed plaintiff's restraints while plaintiff was lying face down on the floor of the cell. Defendant instructed plaintiff to remain on the floor until the door was secured.[3] Prior to the door being secure, plaintiff rolled onto his side and pushed up off of the floor using his hands. Defendant and the team immediately reentered the cell and secured plaintiff. Defendant feared that plaintiff would attempt to batter medical or corrections staff. After plaintiff was again secured by the team, plaintiff yelled that his teeth were broken due to someone hitting him in the mouth with a knee. Plaintiff continued to complain about his teeth. Plaintiff is then examined by the nurse who did not see any physical injuries. The team then released plaintiff and exited the cell without any issues.

On February 14, plaintiff complained of dental pain and was given ibuprofen. Plaintiff continued to complain of dental pain but refused treatment.

---

[3] Plaintiff disputes this fact and cites to the video. Defendant does instruct plaintiff in the video to remain on the ground until the door is secure. (Doc. 117 at 9:07 to 9:20).

On February 16, plaintiff filed a grievance concerning the use of force used during the cell move on February 13.  On February 28, the Unit Team Manager responded to the grievance and stated that the use of force was appropriate based on plaintiff's actions in failing to follow defendant's directions. (Doc. 163, exh. 7).  Plaintiff timely appealed the grievance to the Warden of EDCF on March 1.  The Warden concurred with the Unit Team Manager.  Plaintiff did not appeal the Warden's response to the Secretary of Corrections.  Plaintiff did not submit a personal injury claim to EDCF staff after the incident.

Defendant moves for summary judgment on the basis that plaintiff failed to exhaust his administrative remedies and that defendant is entitled to qualified immunity.

### III. Summary Judgment Standards

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim.  <u>Adamson v. Multi Community Diversified Svcs., Inc.</u>, 514 F.3d 1136, 1145 (10th Cir. 2008).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether,

in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**IV. Analysis**

    **A.    Failure to Exhaust**

Under the PLRA, an inmate must exhaust available administrative remedies before filing a lawsuit about prison conditions. 42 U.S.C. § 1997e. For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis. K.A.R. § 44-15-101(b). If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections. K.A.R. § 44-15-101(d). The procedure to follow at each level is described in detail in K.A.R. § 44-15-102.

The Kansas regulations also include a process for a personal injury claim. Specifically, the inmate must file a personal injury claim with the facility and the secretary of corrections within ten calendar days of the incident. K.A.R. § 44-16-104a. Importantly, the requirements in this section apply regardless of whether the inmate pursues a grievance pursuant to § 44-15-101. K.A.R. § 44-16-104a(c).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense. Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910 (2007). Therefore, at summary judgment, defendant has the initial

-6-

burden of presenting the basis for his motion and demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. To satisfy this burden, defendant must prove administrative remedies were available and plaintiff failed to exhaust these remedies. Purkey v. CCA Detention Ctr., No. 06-3389, 2008 WL 313627, *2 (10th Cir. Feb. 5, 2008).

Plaintiff contends that the administrative remedies were not available to him. With respect to the requirement that he file a personal injury claim, plaintiff states that his request to EDCF staff for a personal injury claim form was denied. (Doc. 185 at 3-4). Defendant denies plaintiff's contention but does not cite to any evidence in the record to support his denial. "If prison officials prevent a prisoner from proceeding with exhaustion of administrative remedies, prison officials render that remedy unavailable such that a court will deem the procedure exhausted." Baughman v. Harless, No. 04-6256, 2005 WL 1806442, *4 (10th Cir. Aug. 2, 2005)(citing Lyon v. Vande Krol, 305 F.3d 806, 808 (8th Cir. 2002). Therefore, there is a genuine dispute of material fact as to whether the administrative remedy for filing a personal injury claim was available to plaintiff.

With respect to appealing his grievance to the Secretary of Corrections, plaintiff states that the appeal was returned to him after he placed it in the mail because he had insufficient credit in his account to purchase a stamp. (Doc. 185 at 4-5). Plaintiff receives four stamps per month but contends that he had utilized all of his stamps prior to mailing his appeal to the Secretary of

Corrections.[4]  Defendant denies that KDOC prevented plaintiff from appealing his grievance but admits that plaintiff may have utilized all of the stamps provided to him.  In Baughman, the Tenth Circuit held that the grievance procedure is unavailable if a plaintiff is "hindered from exhausting his administrative remedies by the failure of prison officials to mail his grievance appeals."  2005 WL 1806442 at *4.  Therefore, there is a genuine dispute of material fact as to whether the grievance process was unavailable to plaintiff.

Defendant's motion for summary judgment on the basis that plaintiff failed to exhaust his administrative remedies is denied.

**B.   Eighth Amendment**

Turning to the merits, plaintiff alleges a claim against defendant pursuant to 42 U.S.C. section 1983, which states any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Section 1983 was enacted to provide protections to those persons wronged by the misuse of power.  While the statute itself creates no substantive civil rights, it does

---

[4] There is nothing unconstitutional or even unreasonable about placing a limit on the number of free stamps to which an inmate may receive. Certainly, the evidence belies any suggestion that plaintiff has been denied access to the courts because of mail restrictions. This case contains over 200 docket entries. But beyond this case, plaintiff has filed at least 25 other cases in this court. His rambling, prolix submissions in this case refer to numerous cases he has filed in Kansas courts and letters he has sent to various state officials.  Both Judges Crow and Robinson have noted plaintiff's perpetual claims about being denied materials and postage. See Lynn v. Varella, 06-3172-SAC, 2007 WL 293906 (D. Kan. Jan. 26, 2007), aff'd 257 Fed. Appx. 80 (10th Cir. 2007) and Lynn v. Roberts, No. 11-3073-JAR, 2011 WL 3667171 (D. Kan. Aug. 22, 2011).

provide an avenue through which civil rights can be redeemed.  See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995).  To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution and (2) that the alleged deprivation was committed under color of state law.  See Am. Mfr's. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  There is no dispute that defendant was acting under color of state law.

### Qualified Immunity

While section 1983 permits the possible vindication of a plaintiff's rights, non-meritorious suits exact a high cost upon society and law enforcement personnel.  See Anderson v. Creighton, 483 U.S. 635, 638 (1987). In order to balance the competing interests, government officials performing discretionary duties are afforded qualified immunity shielding them from civil damages liability. Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed.2d 565 (2009). Qualified immunity protects these officials unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known."  Id.; Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998).  The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well.  See Horstkoetter, 159 F.3d at 1277.

When a defendant claims qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a constitutional right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred.  Pearson, 129 S. Ct. at 815-16.  The

court will first address the constitutional violation prong.

In considering claims of excessive force brought by convicted prisoners, a court must apply the standard set forth in Whitley v. Albers, 475 U.S. 312 (1986), namely, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995 (1992). In Whitley, the Supreme Court stated that, "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." 475 U.S. at 319. Relevant factors to be considered include (1) the need for the application of force; (2) the relationship between the need and amount of force used; and (3) the extent of injury inflicted. Id.; see also Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003). In Sampley v. Ruettgers, 704 F.2d 491 (10th Cir. 1983), the Tenth Circuit set forth the following three factors the inmate must demonstrate: (1) the guard intended to harm the prisoner; (2) the guard used more force than reasonably necessary to maintain or restore institutional order; and (3) the guard's actions caused severe pain or lasting injury to the prisoner. Id. at 495.

Considering the facts alleged by plaintiff under the standards enunciated in Hudson and Sampley, the court finds plaintiff has failed to establish that defendant acted "maliciously and sadistically for the very purpose of causing harm." Smith, 339 F.3d at 1212. Nor does plaintiff establish a "wanton infliction of pain" that was severe, or

a lasting injury.[5]  Instead, the facts clearly show that force was "applied in a good faith effort to maintain or restore discipline." Id.  The video of the incident establishes that plaintiff was being disruptive and non-compliant at the time of the incident.  The video clearly supports a finding that plaintiff continued to threaten EDCF staff and refused to comply with defendant's commands by moving off of the floor immediately after defendant told plaintiff to remain still.  Defendant's physical restraint of plaintiff occurred when defendant was attempting to secure plaintiff so that he did not exit the cell.[6]  Defendant's reaction to plaintiff's failure to follow defendant's command and stay on the floor was entirely appropriate given the circumstances and plaintiff's repeated threats to staff. See Hudson, 503 U.S. at 6 (A prison guard's use of force is entitled to deference by the courts because their decisions are made "in haste, under pressure, and frequently without the luxury of a second chance.")

Plaintiff has failed to present any evidence which would show

---

[5] Plaintiff's injury amounted to a damaged or broken dental bridge - hardly a "lasting injury."

[6] In his complaint, plaintiff alleged that defendant kneed him in the mouth during the restraint.  In his response to defendant's motion for summary judgment, plaintiff states that he now believes that he "was violently fist punched in the mouth [and] that was in fact followed [with] an extremely vicious elbow punch to the mouth." (Doc. 212 at 8).  Plaintiff's current version of the event is based entirely on his viewing of the video.  His claims of being punched in the face are not based on personal knowledge as required by D. Kan. R. 56.1.  The court has viewed the video several times.  The video shows that defendant immediately reentered the cell in order to restrain plaintiff's hands.  There is no evidence on the video of defendant punching plaintiff in the face.  Therefore, while the video does show a brief physical altercation between defendant and plaintiff in an attempt to secure plaintiff, there is no evidence to support plaintiff's current version of the events.

-11-

that defendant was not acting in a good-faith effort to restore discipline.  Therefore, defendant is entitled to qualified immunity.

**V.   Conclusion**

Defendant's motion for summary judgment is granted.  (Doc. 162).

No motion to reconsider this order - regardless of how it is styled - shall be filed.

IT IS SO ORDERED.

Dated this   27th    day of February 2015, at Wichita, Kansas.

```
                                  s/ Monti Belot
                                  Monti L. Belot
                                  UNITED STATES DISTRICT JUDGE
```